**UNITED STATES of America,**

v.

**Rellen A. THOMAS a/k/a Mikey a/k/a Speshy, Rellen A. Thomas, Appellant.**

**No. 03–1010.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 31, 2003.

Decided Dec. 3, 2003.

Jennifer Chun, Office of United States Attorney, Philadelphia, PA, for Appellee.

Andrew F. Erba, Williams, Cuker & Berezofsky, Philadelphia, PA, for Appellant.

Before SCIRICA, Chief Judge, NYGAARD and AMBRO Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

Defendant Rellen A. Thomas appeals his sentence. Thomas was sentenced to 84 months imprisonment, and five years supervised release, after pleading guilty to a charge of conspiracy to distribute more than 1000 kilograms of marijuana, in violation of 21 U.S.C. § 846. Thomas alleges (1) that the District Court erred in finding he acted as a "supervisor" in the conspiracy, making him eligible for a 3–level sentence enhancement; and (2) that the District Court erred in denying his request for a downward departure based on his status as an alien subject to deportation. We will affirm.

I.

Rellen Thomas was part of a drug trafficking organization that used tractor-trailers to transport shipments of marijuana from Texas to Philadelphia. Marijuana shipments were coordinated and financed by a number of named and unnamed coconspirators, including Thomas. The organization employed a trucking company operated by Thomas' half-brother (and co-conspirator) to transport the marijuana along with legitimate loads of produce or other items. Tractor-trailer drivers were recruited to pick up the marijuana, deliver payment to the supplier, and to transport the shipments from Texas to Pennsylvania. Thomas' role in the operation included partially financing the marijuana shipments; traveling to Texas to ensure the quality of the marijuana; loading and unloading the marijuana from the tractor-trailers; recruiting drivers to deliver the marijuana loads; and instructing drivers about the manner in which the marijuana was to be picked up and delivered. After unloading the trucks in Philadelphia, Thomas would resell his portion of the drugs to local customers. Thomas admitted participating in six trips from Texas to Philadelphia to pick up marijuana, and that he was responsible for the distribution of 1,000 to 3,000 kilograms of marijuana.

Applying the Sentencing Guidelines of 2001, the District Court set Thomas' base offense level at thirty-two. The Court then reduced the base offense level by three levels for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a); U.S.S.G. § 3E1.1(b). Finding Thomas had acted as a supervisor in the criminal conspiracy, the Court enhanced the sentence by three levels under U.S.S.G. § 3B1.1(b). Under the Guidelines, Thomas' total offense level of 32, with a criminal history category of II, resulted in a sentencing range of 135 to 168 months imprisonment. The government made a 5K1.1 motion. Considering "all of the circumstances," including Thomas' "early cooperation" with the government and that Thomas was subject to deportation, the District Court imposed a sentence of 84 months in prison.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Our review of the District Court's interpretation and application of the Sentencing Guidelines is plenary. We review the District Court's factual findings for clear error, giving due deference to the Court's application of the Guidelines to the facts. *United States v. Thomas*, 327 F.3d 253, 255 (3d Cir.2003).

## II.

■ The first issue is whether the District Court erred in finding Thomas was a "supervisor" subject to a three-level sentence enhancement under U.S.S.G. § 3B1.1(b). Under the record evidence, the District Court did not clearly err in finding that Thomas acted as a supervisor

who exercised some control over a participant in a conspiracy that involved more than five persons, subjecting him to the enhancement.

The Sentencing Guidelines permit a district court to enhance a defendant's base offense level by three levels if it finds, by a preponderance of the evidence, that the defendant "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). Thomas does not contest the District Court's finding that the criminal activity involved five or more participants, but rather argues that his role was not supervisory in nature. We disagree. To qualify as a "supervisor," the Sentencing Guidelines' Application Notes instruct that the defendant must have been "the organizer, leader, manager, or supervisor of one or more other participants" in the criminal organization. U.S.S.G. § 3B1.1(b) App. Note 2. A defendant acts as a supervisor when he is "so involved in, and connected to, the illegal activity of others that he actually supervises their illegal conduct." *United States v. DeGovannni*, 104 F.3d 43, 44 (3d Cir.1997) (construing the term "supervisor" in 3B1.1(c) case). In this case, at the least, Thomas recruited a driver, Bevan Dunn, to transport marijuana deliveries for the organization. Thomas subsequently served as Dunn's point of contact with the organization, and directed Dunn with regard to pick-ups and deliveries of the drugs.[1] Un-

---

1. Defense counsel points out a discrepancy between statements attributed to Dunn in the DEA's investigation report (dated 1/30/01) and Dunn's grand jury testimony (on 9/26/01) regarding his dealings with Thomas. The DEA report reflects that Dunn stated Thomas paid him for the deliveries and gave him money for attorney's fees related to a driver's license suspension. During Dunn's grand

jury testimony, however, Dunn attributed these actions to a different co-conspirator. Nevertheless, Dunn's statements on both occasions are consistent with regard to three activities: (1) Thomas recruited Dunn to drive the marijuana loads; (2) Thomas served as Dunn's point of contact with the organization; and (3) Thomas directed Dunn regarding the timing and location of pick-ups and deliveries

der these facts, the District Court did not clearly err in applying the three-level supervisory enhancement.

■ Thomas also claims the District Court erred in denying his request for a downward departure based on his status as an alien subject to deportation. At sentencing, defense counsel withdrew a motion for downward departure based on Thomas' alien status.[2] Counsel requested instead that the District Court consider Thomas' alien status merely as "a reason for departure, as opposed to a separate motion itself ... I mean, I'm not going to burden the Court with it." The District Court responded that "in and of itself, the fact that he's facing deportation is not enough" to grant a sentencing departure. Thomas submits that this is the judgment he now appeals.

In imposing sentence, however, the District Court stated that it had specifically considered this factor in determining the sentence. As noted, the government filed a 5K1.1 motion for substantial assistance. The District Court sentenced Thomas to 84 months in prison, a departure from the normal guideline range of 135 to 168 months. The government did not object at sentencing to the Court's suggestion that it considered Thomas' deportability as a mitigating condition, and has not presented an appeal.[3] We find no basis for Thomas' appeal with respect to the Court's treatment of his alien status in determining his sentence.

### III.

As we find that the District Court did not clearly err in granting the supervisory enhancement, and that Thomas has no valid ground to challenge the District Court's treatment of his alien status in determining his sentence, we will affirm the judgment of conviction and sentence.

---

of the marijuana. On these consistent facts, the District Court did not clearly err in finding Thomas a supervisor.

2. The transcript shows:

THE COURT: We've received a motion for a downward departure from the Government. And the defendant's memo also requests a departure, a downward departure.
DEFENSE COUNSEL: Yes, Your Honor.
THE COURT: Did you withdraw that?
DEFENSE COUNSEL: Yes, Your Honor. I will make argument in support of the, as reasons for departing from the Government's memoranda ...

3. The government notes that under *United States v. Casiano*, 113 F.3d 420, 429–30 (3d Cir.1997), once a district court decides to grant a 5K1.1 motion, it may not determine the extent of the departure based on factors other than those related to the quality of the defendant's substantial assistance which prompted the government motion. However, the government did not object at sentencing to the District Court's statement that it considered Thomas' alien status in determining his sentence, and has presented no appeal on this issue. Instead, the government argues that by withdrawing his motion for downward departure at sentencing, Thomas has waived his ability to appeal this issue. We do not agree. Waiver requires "intentional relinquishment or abandonment of a known right or privilege." *United States ex rel. O'Connor v. State of New Jersey*, 405 F.2d 632, 634 n. 2 (3d Cir.1969) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Despite Thomas' withdrawn motion, we do not believe he intentionally abandoned his request that the District Court consider his alien status when determining his sentence.